760 So.2d 924 (2000)
Xzavier TRAPP, Petitioner,
v.
STATE of Florida, Respondent.
No. SC96074.
Supreme Court of Florida.
June 1, 2000.
*925 Nancy A. Daniels, Public Defender, and Carl S. McGinnes, Assistant Public Defender, Second Judicial Circuit, Tallahassee, Florida, for Petitioner
Robert A. Butterworth, Attorney General, James W. Rogers, Tallahassee Bureau Chief-Criminal Appeals, and Giselle Lylen Rivera, Assistant Attorney General, Tallahassee, Florida, for Respondent
PER CURIAM.
We have for review Trapp v. State, 736 So.2d 736 (Fla. 1st DCA 1999), in which the First District Court of Appeal affirmed Xzavier Trapp's conviction and sentence and certified the following question to be one of great public importance:
WHETHER CHAPTER 95-184 VIOLATES ARTICLE III, SECTION 6 OF THE FLORIDA CONSTITUTION.
We have jurisdiction. See Art. V, § 3(b)(4), Fla. Const. Based on our recent decision in Heggs v. State, 759 So.2d 620 (Fla.2000), in which we held chapter 95-184, Laws of Florida, to be unconstitutional as violative of the single subject rule contained in article III, section 6 of the Florida Constitution, we answer the certified question in the affirmative. Further, as explained in more detail below, we determine that Trapp has standing to challenge chapter 95-184 on single subject rule grounds.

I. FACTS AND PROCEDURAL HISTORY IN THIS CASE
On November 8, 1991, the State filed an information charging Trapp with aggravated battery with a deadly weapon, with such offense occurring on October 23, 1991. Trapp later pled nolo contendere to aggravated battery without a firearm, and the trial court adjudicated him guilty of that offense and placed him on three years' probation. Trapp violated his probation on several later occasions. Subsequently, on February 18, 1997, the State filed an information charging Trapp with attempted first-degree premeditated murder with a firearm, with such offense occurring on January 10, 1997. Trapp pled not guilty and proceeded to trial, at the conclusion of which the jury returned a verdict finding him guilty as charged. The trial court then adjudicated Trapp guilty on the attempted murder charge and revoked his probation on the 1991 aggravated battery charge.
As for sentencing, the trial court sentenced Trapp to four and one-half years in prison on the aggravated battery charge, to run concurrent with a 155.75-month prison sentence (12.9 years) on the attempted murder charge. Further, because Trapp committed the attempted *926 murder offense while carrying a firearm, the trial court imposed a three-year mandatory minimum prison term in relation to that offense.[1]
In sentencing Trapp on the attempted murder offense, the trial court utilized the sentencing guidelines as amended in chapter 95-184, Laws of Florida, and chapter 96-388, Laws of Florida.[2] According to the guidelines scoresheet utilized in Trapp's case, the following points were assessed in calculating the appropriate sentence: 92 points on the attempted murder primary offense; 40 points for severe victim injury; 14 points for the prior aggravated battery offense; 2.6 points for prior misdemeanor offenses; and 4 points for a legal status violation.[3] The total sentence points in Trapp's case, therefore, was 152.6 points, resulting in a sentencing range of 93.45 months to 155.75 months. The trial court sentenced Trapp to the maximum under the guidelines. If the 1994 guidelines had been used to calculate the sentence in Trapp's case, however, 91 points, not 92 points, would have been assessed for the primary offense, and 5.6 points, not 14 points, would have been assessed on the prior aggravated battery offense. See § 921.0012, Fla. Stat. (Supp. 1994); see also Initial Brief of Petitioner at 17. The total sentence points in Trapp's case under the 1994 guidelines would therefore have been 143.2 points, resulting in a sentencing range from 86.4 months to 144 months. Thus, Trapp's sentence under the 1994 guidelines would have been almost one year shorter than the sentence he received. Trapp appealed.
On appeal, Trapp raised two issues for the First District's consideration. See Trapp, 736 So.2d at 737. First, Trapp argued that the trial court abused its discretion by permitting the State to present demonstrative evidence in the form of a diagram to facilitate witness testimony. See id. The First District found no error regarding this issue and affirmed without further comment. See id. Second, Trapp raised a single subject rule challenge to chapter 95-184.[4]See id. After analyzing this issue, the First District determined that chapter 95-184 does not violate the single subject rule and certified to this *927 Court the question set forth above. See id. at 737-39. Trapp sought this Court's review of the certified question-which we answer in the affirmative based on our decision in Heggs-and we now address the issue concerning the appropriate window period for certain persons challenging chapter 95-184 on single subject rule grounds, an issue regarding which the parties have filed supplemental briefs.[5]

II. WINDOW PERIOD ANALYSIS
In Heggs, we noted the conflict between the Second District's decision in Heggs v. State, 718 So.2d 263 (Fla. 2d DCA 1998), and the Fourth District's decision in Bortel v. State, 743 So.2d 595 (Fla. 4th DCA 1999), as to when the window period closed for persons claiming a guidelines sentence to be invalid due to the amendments made by chapter 95-184. See 759 So.2d at 623. In its decision in Heggs, the Second District determined that the window period closed on May 24, 1997, when chapter 97-97, Laws of Florida, reenacted the provisions contained in chapter 95-184 as part of the Legislature's biennial adoption of the Florida Statutes. See Heggs, 718 So.2d at 264 n. 1. Conversely, the Fourth District in Bortel determined that the window period closed on October 1, 1996, when the relevant provisions of chapter 96-388, Laws of Florida, became effective. See 743 So.2d at 596 (relying on Salters v. State, 731 So.2d 826 (Fla. 4th DCA 1999), and Scott v. State, 721 So.2d 1245 (Fla. 4th DCA 1998)). We declined to resolve the conflict regarding the window period in our decision in Heggs, however, because the defendant there had standing to raise a single subject rule challenge whether the window period closed on October 1, 1996, or on May 24, 1997. See 759 So.2d at 623. In this case, however, because Trapp committed the underlying offense on January 10, 1997, he would not have standing to raise a single subject rule challenge if the window period closed on October 1, 1996. Therefore, we must determine the window period issue here.
In Salters v. State, 758 So.2d 667 (Fla. 2000), we explained that the general mechanism for curing single subject rule violative chapter laws is through the Legislature's biennial adoption of the Florida Statutes. See Salters, at 670 (citing Loxahatchee River Environmental Control District v. School Board of Palm Beach County, 515 So.2d 217 (Fla.1987)). We also explained in Salters that there is an exception to the general rule based on this Court's decision in Martinez v. Scanlan, 582 So.2d 1167 (Fla.1991). Specifically, in Martinez, this Court determined that the Legislature's separation and reenactment of the dissimilar provisions originally contained in a chapter law can cure a single subject rule violation. See 582 So.2d at 1172 (determining that separation and reenactment "clearly cured the single subject objection and demonstrated the legislature's intent to amend the preexisting workers' compensation act without the appendage of the international trade legislation"). After considering the general rule and the exception, we determined in Salters that the general rule applied there because the relevant provisions passed by the Legislature in chapter 96-388 amended, but did not reenact, the relevant provisions contained in chapter 95-182, Laws of Florida. After carefully considering the relevant provisions of chapter 95-184 and chapter 96-388 at issue here, we reach the same conclusion as we did in Salters.
In sections 22, 50, 51, and 53 of chapter 96-388, the Legislature addressed several statutory provisions previously addressed *928 in chapter 95-184: sections 921.0011, 921.0012, and 921.0014, Florida Statutes. Compare Ch. 95-184, §§ 4-6, at 1678-98, with Ch. 96-388, §§ 22, 50-51, 53, at 2321, 2340-56. Specifically, in section 50 of chapter 96-388, the Legislature amended section 921.0011, Florida Statutes, by making grammatical changes and revising the scoring of victim injury points for sexual penetration set forth in subsection (7) of the statute. See Ch. 96-388, § 50, at 2340. Previously, in section 4 of chapter 95-184, the Legislature had amended section 921.0011 by revising definitions contained in subsections (3) and (6) of the statute. See Ch. 95-184, § 4, at 1678-79.
In section 51 of chapter 96-388, the Legislature amended section 921.0012, Florida Statutes, by making various changes to sentencing guidelines offense levels and the offense ranking chart. See Ch. 96-388, § 51, at 2340-52. Previously, in section 5 of chapter 95-184, the Legislature had amended section 921.0012 by revising sentencing guidelines offense levels and the offense ranking chart. See Ch. 95-184, § 5, at 1679-93.
Finally, in sections 22 and 53 of chapter 96-388, the Legislature amended section 921.0014, Florida Statutes, by, among other things, (1) delegating to the Department of Corrections various duties concerning sentencing guidelines scoresheets;[6] and (2) revising sentencing guidelines scoresheet computations to reflect changes made in the offense severity ranking chart and to add the "criminal street gang member" multiplier for sentence computations. See Ch. 96-388, § 22 at 2321; § 53 at 2352-56. Previously, in section 6 chapter 95-184, the Legislature had revised sentencing guidelines scoresheet computations by, among other things, increasing points scored on different sentencing criteria. See Ch. 95-184, § 6, at 1693-98.
After considering the relevant provisions of chapter 95-184 and chapter 96-388 in light of the general rule and exception discussed in Salters, we hold that window period for challenging the sentencing guidelines provisions amended in chapter 95-184, Laws of Florida, opened on October 1, 1995, when such amended guidelines provisions became effective, and closed on May 24, 1997, when chapter 97-97, Laws of Florida, reenacted the amendments contained in chapter 95-184 as part of the biennial adoption process. Stated another way, persons such as Trapp who are challenging a sentence imposed under the sentencing guidelines as amended by chapter 95-184 have standing to do so if the relevant criminal offense or offenses occurred on or after October 1, 1995, and before May 24, 1997. This is so because the Legislature's passage of the relevant provisions of chapter 96-388 only amended, but did not reenact, the guidelines provisions previously amended in chapter 95-184. Unlike the situation in Scanlan, the Legislature here did not cure the single subject problems implicated in chapter 95-184 by separating the dissimilar provisions and reenacting those provisions into law separately. Based on this analysis and determination, we need not address Trapp's argument that chapter 96-388 itself violates the single subject rule.

III. CONCLUSION
Accordingly, based on the foregoing, we answer the certified question in the affirmative and find that Trapp has standing to challenge chapter 95-184 on single subject rule grounds. We quash the decision below with directions that Trapp's sentence on the attempted murder offense be reversed. Finally, we remand for resentencing in accordance with the sentencing guidelines in effect before the relevant amendments made in chapter 95-184 became effective.
It is so ordered.
*929 HARDING, C.J., and SHAW, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.
WELLS, J., dissents.
NOTES
[1] The trial court orally imposed the mandatory minimum term at the sentencing hearing, but the court failed to note the term on the written sentencing order. In such circumstances, the oral pronouncement controls. See, e.g., State v. Williams, 712 So.2d 762, 764 (Fla.1998) (citing Justice v. State, 674 So.2d 123, 125 (Fla.1996), for the proposition that "there is a judicial policy that the actual oral imposition of sanctions should prevail over any subsequent written order to the contrary").
[2] In calculating the sentence to be imposed on the 1991 aggravated battery offense, the trial court utilized the sentencing guidelines scoresheet set forth in rule 3.988(j) of the Florida Rules of Criminal Procedure, effective January 1, 1991.
[3] The amendments to the sentencing guidelines made by chapter 96-388, Laws of Florida, did not alter the points assessed for the primary offense, victim injury, prior record, or legal status violation in Trapp's case. Compare Ch. 95-184, § 6 at 1693-96, Laws of Fla. with Ch. 96-388, § 53, at 2352-54, Laws of Fla.
[4] Trapp did not raise a single subject rule challenge to chapter 95-184 in the trial court, and the First District did not address this preservation issue in the decision below. It is clear, however, that the guidelines sentence imposed in Trapp's case is almost one year longer than the maximum sentence he could have received under the 1994 guidelines. Further, Trapp filed his appeal in the First District before this Court issued its decision in Amendments of Rules of Criminal Procedure 3.111(e) & 3.800 & Rules of Appellate Procedure 9.020(h), 9.140, & 9.600, 761 So.2d 1015 (Fla.1999). Accordingly, we find in this case that Trapp's single subject rule challenge may be properly addressed for the first time on appeal. See Salters v. State, 758 So.2d 667, 669 n. 4 (Fla.2000); Heggs v. State, 759 So.2d 620, 623, 624 n. 4 (Fla.2000); cf. Maddox v. State, 760 So.2d 89, 98 (Fla.2000); Nelson v. State, 748 So.2d 237, 241-42 (Fla.1999), cert. denied, ___ U.S. ___, 120 S.Ct. 950, 145 L.Ed.2d 825 (2000); State v. Johnson, 616 So.2d 1, 3-4 (Fla.1993).
[5] Trapp requests that we also address whether the trial court abused its discretion by permitting the State to utilize a diagram to facilitate witness testimony. The First District found no merit to Trapp's arguments regarding this issue, see Trapp, 736 So.2d at 737, and the issue is outside the scope of the certified question here. We decline to address the issue. See, e.g., Burks v. State, 613 So.2d 441, 446 n. 6 (Fla.1993) (declining to address additional issues raised by petitioner where such issues "were unnecessary to the resolution of the certified question").
[6] The Legislature made this amendment in section 22 of chapter 96-388, which became effective on October 1, 1997. See Ch. 96-388, § 22, at 2321, Laws of Fla.